UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESUS VARGAS,

      Plaintiff,

v.                          Case No.: 8:16-cv-1949-T-33JSS

MICHAELS STORES, INC.,

      Defendant.

_____/

## ORDER

This matter comes before the Court upon consideration of Defendant Michaels Stores, Inc.'s Omnibus Motion in Limine (Doc. # 56), filed on August 2, 2017. Plaintiff Jesus Vargas filed his response on August 16, 2017. (Doc. # 60). As set forth herein, the Motion is granted in part and denied in part.

## I.  Legal Standard

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion

1

in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." Id. (internal quotation omitted). "A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Id. (internal quotation omitted).

"A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." LSQ Funding Grp. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012)(citing Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." In re Seroquel, 2009 WL 260989, at *1 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." Id. "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." Id.

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003)("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

## II.  Analysis

Rule 401, Federal Rules of Evidence, defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. All relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid.

402, 403; <u>United States v. Ross</u>, 33 F.3d 1507, 1524 (11th Cir. 1994). Use of Rule 403 to exclude relevant evidence is an "extraordinary remedy" whose "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." <u>United States v. Grant</u>, 256 F.3d 1146, 1155 (11th Cir. 2001).

Michaels now seeks an order in limine barring Vargas from presenting evidence on sixteen different topics, arguing that these topics are irrelevant or unduly prejudicial. (Doc. # 56). The Court will address each topic in turn.

## 1. <u>Any evidence, statement, or argument related to settlement negotiations</u>

Michaels seeks to exclude any evidence regarding settlement negotiations pursuant to Federal Rules of Evidence 401, 402, 403, and 408. (<u>Id.</u> at 2). Rule 408 makes settlement negotiations and compromise offers inadmissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). But Rule 408(b) contains an exception: "The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving

an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

Therefore, Rule 408 does not justify a complete bar on the admissibility of evidence of settlement negotiations. And the Court cannot determine at this juncture whether discussion of settlement negotiations for the reasons permitted under Rule 408(b) would be unfairly prejudicial or confuse the jury. Accordingly, the Motion is denied to the extent evidence of settlement negotiations is permitted for the purposes enumerated in Rule 408(b). More specific objections regarding relevance or undue prejudice under Rules 401, 402, and 403 may be addressed at trial.

### 2. **Any evidence, statement, or argument of insurance**

Pursuant to Rules 403 and 411, Michaels moves to exclude any evidence, statement, or argument about whether it possesses liability insurance. (Doc. # 56 at 2). Federal Rule of Evidence 411 states: "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Fed. R. Evid. 411.

Thus, the rule explicitly contemplates situations in which evidence of insurance would be admissible. Vargas requests "that this Court allow such evidence to be presented to a jury" for the purposes permitted by Rule 411, if the need arises. (Doc. # 60 at 1-2). The Court agrees that all evidence of insurance should not be categorically excluded under Rule 411. And the Court cannot determine at this time whether discussion of Michaels's insurance for the permissible purposes under Rule 411 would be irrelevant or unduly prejudicial under Rule 403. Therefore, the Court denies Michaels's Motion without prejudice. Michaels may raise more specific objections to evidence of insurance at trial.

### 3. **Any evidence, statement, or argument regarding the EEOC's Notice of Right to Sue and determinations therein**

Michaels seeks to exclude the EEOC's Notice of Right to Sue letter that was issued to Vargas. Michaels argues the letter is irrelevant because "it is undisputed that [Vargas] exhausted his administrative remedies before bringing his claims." (Doc. # 56 at 2). Additionally, Michaels argues the letter is unduly prejudicial under Rule 403 because "the jury may improperly believe its findings are conclusive or indicative of fault" and "may give unjustifiable weight to a

federal agency's determination." (Id. at 2-3). Vargas argues that the letter is neither irrelevant nor prejudicial. (Doc. # 60 at 2).

The Eleventh Circuit has stated that district courts must make determinations on a case by case basis whether to admit EEOC documents in a discrimination case before a jury. Barfield v. Orange Cty., 911 F.2d 644, 650 (11th Cir. 1990). The relevant factors include whether the documents contain legal conclusions in addition to factual content, whether questions of trustworthiness are raised pursuant to Fed. R. Evid. 803(8)(c), and whether the evidence presents prejudice issues pursuant to Rule 403. And, although there may be circumstances in which the probative value of an EEOC determination is dwarfed by the danger of unfair prejudice, the Eleventh Circuit has stated that such EEOC findings are often "highly probative." Id. at 649.

But here, as Michaels notes, the EEOC made no determination as to whether the alleged discrimination occurred. (Doc. # 56 at 3). Therefore, the danger Michaels describes — that the jury would believe the EEOC had determined discrimination actually occurred — is low. The Court cannot determine outside the trial context whether the use of the Notice of Right to Sue letter would be unduly

prejudicial and outweigh its probative value. The Court
denies Michaels's Motion without prejudice.

### 4.   Any evidence, statement, or argument related to the financial wealth of the parties

Michaels seeks to exclude evidence regarding the
financial wealth of the parties because "any reference to
[Vargas] or [Michaels's] financial wealth is likely to cause
confusion to the jury and would prejudice the opposing party."
(Doc. # 56 at 3). But Vargas argues introduction of evidence
of the parties' wealth is harmless and that such evidence,
including profit and loss statements for the store at which
Vargas worked, is necessary to establish Vargas's damages and
show that Vargas was performing well as store manager. (Doc.
# 60 at 3).

The Court shares Michaels's concern that evidence of the
relative wealth of the parties could be used to confuse or
mislead the jury. But Vargas notes legitimate uses for some
financial information, such as Vargas's salary and the profit
and loss statements for the store. Therefore, the Court
declines to categorically exclude all evidence that would
indicate the wealth of the parties. But the Court will
entertain objections as they arise at trial, regarding

particular uses of this evidence. Michaels's Motion is denied without prejudice.

**5.** **Any reference to the Motion for Summary Judgment and Dismissed Claims**

Michaels argues that "any reference to the dismissed claims, or facts supporting them, as well as any reference to [Michaels's] Motion for Summary Judgment, is irrelevant and would cause confusion to the jury and would prejudice [Michaels]." (Doc. # 56 at 3-4). But, as Vargas points out, no counts of the Amended Complaint were dismissed by the Court's Order. (Doc. # 60 at 3-4). Rather, the Court held that Vargas could not proceed on a single-motive theory of discrimination, and could only proceed on a mixed-motives theory for his claims. And Vargas relies on many of the same facts for his mixed-motives theory as he did for his single-motive theory. To prevent discussion of those facts would severely limit Vargas's ability to present his case and is beyond the scope of a motion in limine. Therefore, the Court denies Michaels's Motion without prejudice.

**6.** **Any reference to Vargas's religion, religious preference, or participation in non-secular events**

Michaels argues that "[a]ny reference to [Vargas's] religion, religious preference, or participation in non-secular activities would bear no relevance to the matters

being litigated and would serve only to garner sympathy from those members of the jury with similar religious backgrounds." (Doc. # 56 at 4). Vargas counters that his master's degree in Theology, as part of his educational background, "is relevant evidence that must be presented to the jury." (Doc. # 60 at 4). He also maintains that his counseling by priests is "imperative to his claim for damages." (Id.).

Rule 610 states "[e]vidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility." Fed. R. Evid. 610. And the Advisory Committee notes for the rule clarify that "an inquiry for the purpose of showing interest or bias because of [the witness's religious beliefs] is not within the prohibition." Id.

The Court agrees with Vargas that his master's degree in theology is relevant to his background and employability. Nor does reference to the theology degree create such a risk of unfair prejudice that categorical exclusion is warranted. And, regarding the counseling sessions, the Court finds that they should not be categorically excluded either. To the extent Vargas sought counseling because of emotional troubles related to his termination, the counseling sessions are

relevant to damages. Nor would discussion of these counseling sessions for the purpose of establishing damages be an inadmissible use of Vargas's religious beliefs to bolster his credibility. The Court denies Michaels's Motion without prejudice, but Michaels may raise specific objections at trial.

**7.    Any evidence, statement, or argument related to Vargas's conjecture concerning the discrimination or termination of others**

Pursuant to Rules 401, 402, and 403, Michaels argues that Vargas should not be able to present evidence "that other employees, in particular Marco Salazar and Daniel Narvaez, were terminated because they were Hispanic." (Doc. # 56 at 4). Michaels argues such allegations are "irrelevant and will only serve to unfairly prejudice" Michaels. (Id.). Michaels emphasizes that the Court in its summary judgment order noted the only evidence of these other claims of discrimination came from Vargas's deposition testimony about phone calls he had with Salazar and Narvaez. (Doc. # 52 at 45). And the Court also noted that Salazar and Narvaez worked in Michaels stores in New York and were not terminated by Vargas's supervisor, Zenn. (Id.). For these same reasons, Michaels insists "permit[ing] [Vargas] to testify as to his pure conjecture that others may have been discriminated against because they

are Hispanic would only serve to mislead the jury, confuse the issues, and cause undue prejudice to [Michaels]." (Doc. # 56 at 5).

Vargas argues the "probative value of this evidence outweighs any alleged prejudice claimed by [Michaels]" because both Narvaez and Salazar were store managers, like Vargas, and were placed on Performance Improvement Plans right before determination of their bonus eligibility. (Doc. # 60 at 4-5). Vargas emphasizes that he "has made allegations that [Michaels] maintained a pattern and practice of discriminating against Hispanic Store Managers" and "should be able to introduce this evidence to prove his claim." (Id. at 5).

The Court cannot determine at this time whether the danger of undue prejudice caused by Vargas's testimony regarding the other Hispanic store managers outweighs its probative value. Although the Court denies Michaels's Motion without prejudice at this juncture, Michaels may raise specific objections regarding relevance and prejudice during trial. Additionally, Michaels may raise any arguments regarding the general prohibition on hearsay under Rule 802 at trial.

### 8. <u>**Any layman's use of certain terms**</u>

Michaels seeks to exclude the use of the terms "discrimination," "harassment," "retaliation," "adverse employment action," and/or "tangible employment action" by any lay witness. (Doc. # 56 at 5). Michaels argues use of these terms, which bear upon ultimate issues of fact, by lay witnesses would create a "risk of misleading the jury, confusing the issues, and causing undue prejudice to [Michaels]." (<u>Id.</u>). Vargas argues Michaels's Motion is impractical because some terms, like discrimination, harassment, and retaliation, are "regularly defined and used by lay witnesses" and other terms, like adverse employment action, "are words that can be defined by this Court and which will most likely be included in jury instructions." (Doc. # 60 at 5).

While the Court understands Michaels's concern that witnesses may misuse these terms during trial, the Court cannot determine outside the trial context whether such use will occur, or be inappropriate if it does. Indeed, some of these terms are used in common parlance and the jury would not necessarily be confused by their use by lay witnesses. Therefore, Michaels's Motion is denied without prejudice as

to these terms. Michaels may raise more specific objections at trial.

**9.    Any evidence, statement, or argument that Vargas was involved in any alleged plan to open stores in Puerto Rico**

Michaels requests an order barring "[a]ny reference to [Vargas's] allegations that he was hired by Michaels to eventually open stores in Puerto Rico" because such allegations "bear[] no relevance on the issues to be presented to the jury and will only serve to confuse or mislead them." (Doc. # 56 at 5). Michaels notes that Vargas "has not proffered any evidence that the alleged discriminatory actors were aware of these alleged plans for Puerto Rico." (Id.).

Vargas counters that the "reasons for [Michaels's] transfer of [Vargas's] employment to the Tampa area is directly relevant to [Vargas's] employment history with [Michaels] and his claims." (Doc. # 60 at 5). The Court agrees the reasons for Vargas's transfer to Florida are relevant to his career here. Nor can the Court conclude at this juncture that Vargas's testimony as to his reasons for transfer would be unduly prejudicial or misleading. Therefore, the Motion is denied without prejudice and Michaels may raise specific objections at trial.

**10. Any evidence, statement, or argument that Vargas moved his child to a school closer to the store**

Michaels seeks exclusion of Vargas's allegation that "after he received disciplinary action for the store's failed audit, he moved his child closer to [Michaels's] Dale Mabry location so that he could spend more time in the store and address its deficiencies." (Doc. # 56 at 6). Michaels argues "[s]uch testimony is not only irrelevant as to whether [Vargas] was subjected to discriminatory treatment, it is designed to evoke sympathy for [Vargas] at the expense of prejudicing [Michaels]." (Id.). But Vargas insists "[t]his evidence is necessary to prove [his] case, i.e., how the continued discriminatory treatment affected him." (Doc. # 60 at 6). According to Vargas, "[i]f barred from presenting this evidence to a jury, [his] case will be severely prejudiced as he will not be able to present his entire case to the jury." (Id.).

Although the Court understands Michaels's concerns, the Court determines that a categorical bar on this evidence is inappropriate, given its relevance to Vargas's allegations about his work performance. Accordingly, the Motion is denied without prejudice but Michaels may raise specific objections at trial.

**11. <u>Any evidence, statement, or argument regarding
Michaels's investigation of former Store Manager
Bill Dutka</u>**

Pursuant to Rules 401, 402, and 403, Michaels argues
that any mention of Bill Dutka, a former store manager at the
Michaels store in Spring Hill, Florida, and the investigation
into Dutka's alleged impropriety with cash register logs
should be excluded. (Doc. # 56 at 6-7). Michaels argues Dutka
"is not a proper comparator to [Vargas] because the conduct
at issue was not sufficiently similar for proper comparison"
and "should not be introduced to the jury." (<u>Id.</u>). But Vargas
insists Dutka is a proper comparator for Vargas, and that
discussion of the investigation of Dutka "is imperative to
[Vargas's] case that his race and national origin
substantially motivated [Michaels] to terminate him." (Doc.
# 60 at 7).

A motion in limine should not be used to decide
substantive issues, such as whether Dutka is a proper
comparator or whether Dutka violated company policies and
should have been disciplined. <u>See</u> <u>LSQ Funding Grp.</u>, 879 F.
Supp. 2d at 1337 ("A motion in limine is not the proper
vehicle to resolve substantive issues, to test issues of law,
or to address or narrow the issues to be tried."). Vargas's
allegation — that Dutka was treated more favorably than Vargas

because of his race and national origin — is more appropriately addressed by impeachment testimony than a categorical bar on the subject. Therefore, the Motion is denied without prejudice.

> **12.** **Any evidence, statement, or argument regarding Zenn's treatment of non-Hispanic managers at locations other than the store at which Vargas worked**

Michaels argues Vargas "should not be permitted to argue or offer evidence regarding Zenn's alleged treatment of non-Hispanic store managers at other locations" because Vargas has not proffered sufficient evidence that discriminatory treatment took place or that the treatment was based on Vargas's race or national origin. (Doc. # 56 at 7-8). But Vargas notes "[e]vidence of how Mr. Zenn treated other, non-Hispanic Store Managers is directly relevant and material to his case and any decisions regarding those facts must be made by the trier of fact — a jury." (Doc. # 60 at 8).

The Court agrees with Vargas. It is true the Court in its summary judgment order disagreed with Vargas over whether the allegation that Zenn treated non-Hispanic store managers more favorably supported that the stated reason for Vargas's termination was pretextual. (Doc. # 52 at 27-28). But the Court did not rule that Vargas's allegations could not be

presented to the jury in support of his mixed-motives theory of discrimination. Zenn's treatment of other store managers he supervised is relevant to whether race or national origin discrimination was one motive for Michaels's termination of Vargas. Therefore, Michaels's Motion is denied without prejudice.

### 13. <u>Any evidence, statement, or argument concerning the state of Vargas's marriage</u>

Pursuant to Rules 401, 402, and 403, Michaels argues that any evidence or testimony "regarding marital issues that [Vargas] had to overcome, particularly during the latter part of his employment with [Michaels] and shortly after his termination" should be excluded as unduly prejudicial. (Doc. # 56 at 8). In response, Vargas claims that "[t]he state of [Vargas's] marriage, specifically the toll the discriminatory actions caused [him] and which resulted in his marriage almost ending, is relevant to the compensatory and punitive damages sought in this case." (Doc. # 60 at 8).

The Court agrees with Vargas that the effect the alleged discrimination had on Vargas's personal life, including his marriage, is relevant to damages. And the Court cannot determine at this juncture whether any mention of these marital difficulties would be unduly prejudicial to Michaels.

Accordingly, the Motion is denied without prejudice and Michaels may raise specific objections at trial.

## 14. Any evidence, statement, or argument alleging that Roberts, McGrath, and Colbeth are proper comparators

Michaels seeks to exclude any argument that Roberts, McGrath, and Colbeth, who were all subordinate managers while Vargas was store manager, are proper comparators to Vargas. (Doc. # 56 at 8-9). Michaels emphasizes that these individuals were subordinate to Vargas and that their alleged misconduct was not similar to Vargas's. (Id.).

But, again, "[a] motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." LSQ Funding Grp., 879 F. Supp. 2d at 1337. Whether Roberts, McGrath, and Colbeth are sufficiently similar to Vargas to serve as direct comparators is a substantive question that should not be resolved through a motion in limine. Accordingly, the Motion is denied without prejudice.

## 15. Any characterization of Vargas's Performance Improvement Plan as an "adverse employment action"

Michaels argues that "any characterization of [Vargas's] PIP as an adverse employment action will only serve to confuse and mislead the jury" because the Court ruled in its summary

judgment order that the PIP was not an adverse employment action. (Doc. # 56 at 10). Indeed, in that order, the Court wrote "the PIP was not an adverse employment action" because "Vargas has not shown that any material alteration of his terms and conditions of employment as a result of the PIP actually occurred." (Doc. # 52 at 38-39).

Although Vargas disagrees with the Court's determination that the PIP was not an adverse employment action, the Court agrees with Michaels that the PIP should not be presented to the jury as an adverse employment action, given the Court's ruling that the PIP is not one. Therefore, the Motion is granted and the PIP may not be described as an adverse employment action. But, while it may not be characterized as an adverse employment action, the PIP may be presented to the jury as evidence probative of whether Vargas's race and national origin was a reason for the allegedly discriminatory treatment and termination.

**16. Any evidence, statement, or argument that Vargas was denied a bonus as a result of being placed on a Performance Improvement Plan**

Pursuant to Rules 401, 402, and 403, Michaels seeks to prevent Vargas "from presenting any evidence, statement, or argument that he was denied a bonus as a result of being placed on the PIP." (Doc. # 56 at 10). The Court noted in its

summary judgment order that bonus eligibility was determined at the end of the fiscal year and Vargas was terminated before the end of the fiscal year — so his termination, rather than the PIP, prevented him from receiving a bonus. (Doc. # 52 at 14-15, 18, 38). Because allegations that Vargas was denied a bonus because of the PIP, rather than his termination before bonuses were awarded, would likely confuse or mislead the jury, the Court agrees such statements should be excluded.

Nevertheless, Vargas insists that he "should be able to present evidence to a jury that the PIP was intended to cause material changes to the terms and conditions of his employment, including denial of his bonus." (Doc. # 60 at 9-10). While the PIP was not ultimately the reason for Vargas failing to receive a bonus, Vargas may present evidence that Zenn placed him on the PIP with the intent of discriminatorily depriving him of a bonus. Therefore, the Motion is granted but Vargas may present his theory that the PIP was issued with the intent to discriminate against him and deprive him of a bonus.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Michaels Stores, Inc.'s Omnibus Motion in Limine (Doc. # 56) is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 29th day of August, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE