UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESUS VARGAS,

    Plaintiff,

v.                          Case No.: 8:16-cv-1949-T-33JSS

MICHAELS STORES, INC.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiff Jesus Vargas's Motions in Limine (Doc. # 55), filed on August 2, 2017. Defendant Michaels Stores, Inc., filed its response on August 16, 2017. (Doc. # 61). For the reasons that follow, the Motions are denied without prejudice.

**I.   Legal Standard**

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's

1

position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." Id. (internal quotation omitted). "A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Id. (internal quotation omitted).

"A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." LSQ Funding Grp. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012)(citing Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." In re Seroquel, 2009 WL 260989, at *1 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." Id. "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." Id.

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not

disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003)("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

**II. Analysis**

Rule 401, Federal Rules of Evidence, defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. All relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 402, 403; United States v. Ross, 33 F.3d 1507, 1524 (11th Cir. 1994). Use of Rule 403 to exclude relevant evidence is

an "extraordinary remedy" whose "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. Grant, 256 F.3d 1146, 1155 (11th Cir. 2001).

Vargas now seeks an order in limine barring Michaels from presenting three types of evidence. (Doc. # 55). The Court will address each type in turn.

1. **Vargas's 2010 Performance Evaluation**

Vargas seeks to exclude a 2010 performance evaluation from when he was a Michaels store manager in New York. (Doc. # 55 at 2). In the evaluation, Vargas's then-supervisor, District Manager Lynnette Jones, commented "Jesus sometimes gets short tempered with staff when they are not on the same page as he is or if they push back on his direction. Jesus must work on his negotiation skills with his entire staff to maximize their performance." (Doc. # 49-1 at 6). Vargas asserts the evaluation "has no probative value and will unfairly prejudice a jury against [him]" because Jones never disciplined or counseled Vargas for any conduct related to the evaluation and the evaluation occurred in New York before Vargas's transfer to Tampa. (Doc. # 55 at 2).

But Michaels argues the evaluation is directly relevant and not unfairly prejudicial because Vargas "relies heavily on the argument that [he] was never disciplined by his prior managers, which, allegedly, indicates Zenn's discriminatory animus." (Doc. # 61 at 2). "[Vargas's] 2010 performance evaluation evidences that [] the behavior Zenn witnessed and ultimately disciplined [Vargas] for in 2013 began years earlier and was observed by previous management." (Id.). Therefore, Michaels reasons, the evaluation "is relevant for the jury to consider in its determination of whether causation exists, as it is directly related to Michaels'[s] theory of the case and is necessary to rebut [Vargas's] argument." (Id.).

The Court agrees with Michaels that the performance evaluation is relevant because it bears on Vargas's interaction style with his staff. Indeed, the performance evaluation tends to rebut Vargas's assertions that he never had any disciplinary issues before Zenn became his supervisor. Although the performance evaluation was not a disciplinary action and was issued before the transfer to Tampa, it shows that the behavior Vargas's employees complained of in the Dale Mabry store was not unprecedented. Therefore, the performance evaluation supports Michaels's

5

contention that its decision to discipline and ultimately terminate Vargas was not motivated by discrimination. And the Court cannot determine at this juncture whether the probative value of the evaluation is outweighed by the risk of undue prejudice or misleading the jury. Accordingly, Vargas's Motion is denied without prejudice as to the 2010 performance evaluation. But Vargas may raise more specific objections at trial.

2. **Anonymous Hotline Calls**

Next, Vargas seeks to exclude any evidence concerning four anonymous calls made to Michaels's human resources hotline about Vargas's treatment of his employees. (Doc. # 55 at 3). He notes that the identities of the callers are unknown and so the callers cannot be cross-examined. Additionally, he stresses that the stated reason for his termination was a different complaint of alleged retaliation — not the specific complaints made in the hotline calls. (Id.). Vargas argues "the hotline calls have no probative value and will result in [] unfair prejudice to [Vargas]." (Id.).

The Court disagrees. As Michaels points out, "these complaints were part of Michaels['s] good faith basis for the decisions it made, and thus are necessary to support its defense regardless of whether the complaints are true." (Doc.

6

# 61 at 3). Michaels terminated Vargas because it believed Vargas was attempting to find out who complained about him for the sake of retaliation — not because of the content of the hotline complaints. Still, the hotline complaints about Vargas are relevant to the case's narrative and support Michaels's stated reason for terminating him. The fact that numerous complaints were made about Vargas's treatment of employees is probative of whether Michaels reasonably believed Vargas would retaliate against his employees. Indeed, one of the anonymous callers stated he or she feared retaliation because Vargas "has retaliated before." (Doc. # 55-1 at 1).

Furthermore, the prejudice to Vargas does not outweigh the probative value of the hotline calls such as to warrant their categorical exclusion at this juncture. It is true the identities of the callers have not been determined and so the callers cannot be cross-examined. But Michaels's employees who received or knew of the calls, such as Vargas's supervisor Zenn, can be questioned about whether the calls were investigated or how the calls influenced their treatment of Vargas. And, while the hotline complaints would be hearsay if used to prove that Vargas did the things described in the complaints, it would not be hearsay for Michaels to use them

to show that complaints were made to it about Vargas. Cf. Peshlakai v. Ruiz, 39 F. Supp. 3d 1264, 1338 (D.N.M. 2014)("Although the evidence about the complaints would be hearsay, if the Court allowed the jury to consider the evidence for its truth, see Fed. R. Evid. 801, the Court concludes that it may allow the jury to consider the evidence for the purpose of notice.").

Accordingly, Vargas's Motion to exclude the anonymous hotline calls is denied without prejudice. Vargas may make more specific objections regarding the anonymous calls at trial.

### 3. Store Tours

Vargas argues the four "store tour" documents, purporting to informally audit the Dale Mabry store's performance during Vargas's tenure as store manager, should be excluded because they have "no probative value, prejudice[] [Vargas] and will confuse and mislead the jury." (Doc. # 55 at 4). Vargas notes that more than four store tours likely took place, but Michaels only produced four — three of which are undated, and all of which indicate unfavorable scores. (Id.). And because Vargas was terminated for alleged retaliation rather than the store tour grades, Vargas argues

the store tour documents are irrelevant and will mislead the jury. (Id.).

But Michaels argues the store tour documents are relevant and not unfairly prejudicial. First, Michaels emphasizes that the reason only four store tour documents were produced was because those were the only store tour records in its possession. (Doc. # 61 at 6). And, according to Michaels, the store tours are "probative evidence showing that Zenn tried to prepare [Vargas] and the Dale Mabry store for an impending audit — which directly contradicts [Vargas's] allegations that Zenn did not support his store because he was Hispanic." (Id. at 6-7).

The Court agrees with Michaels. The store tour documents are relevant to whether Zenn failed to support Vargas because of his race and national origin and whether Vargas was performing as store manager satisfactorily, as Vargas maintains. And the high probative value of these documents is not outweighed by the risk of unfair prejudice or jury confusion so as to warrant their categorical exclusion. Therefore, the Motion is denied without prejudice but Vargas may raise specific objections as needed at trial.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Jesus Vargas's Motions in Limine (Doc. # 55) are **DENIED WITHOUT PREJUDICE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of August, 2017.

<u>/s/ Virginia M. Hernandez Covington</u>
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE